Argued and submitted October 15, 1998, reversed and remanded on petition; affirmed on cross-petition May 19, 1999

In the Matter of the Compensation of
Jerry E. Bishop, Claimant.

Jerry E. BISHOP,
*Petitioner - Cross-Respondent,*

*v.*

OBEC CONSULTING ENGINEERS
and Employers Insurance of Wausau,
*Respondents - Cross-Petitioners.*

(WCB 94-14311; CA A99634)

982 P2d 25

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

HASELTON, J.

## HASELTON, J.

Claimant petitions for review from a final order of the Workers' Compensation Board that determined that claimant was entitled to interim compensation,[1] ORS 656.262(2), from May 1, 1992, the date that claimant notified employer of his medically verified inability to work, through December 15, 1993, the date that claimant received "actual knowledge" that insurer had denied his claim. Claimant contends that where, as here, the Board determines that the insurer never "furnished to the claimant" written notice of the denial, ORS 656.262(6)(a), the claimant's actual knowledge of the purported denial is immaterial to, and does not excuse, that failure. Consequently, claimant asserts that he was entitled to interim compensation through June 20, 1995. Insurer cross-petitions for review, asserting that its obligation to pay interim compensation ended on October 19, 1992, when it mailed a notice of denial to an attorney whom it erroneously believed represented claimant. We agree with claimant that he is entitled to interim compensation through June 20, 1995, and, consequently, reverse and remand.

The material facts are undisputed: Claimant was a partner in a consulting engineering firm. Sometime in the late 1980s, an ownership struggle began, which resulted in claimant's eventual ouster. By mid-1992, claimant was no longer involved in the firm and had retained counsel to resolve issues involving his ownership interest and other matters concerning the firm.

On April 30, 1992, an attorney representing claimant, Cohen, an associate at the Gildea & Facaros law firm, wrote to the employer's attorney to give notice that claimant was suffering from a mental disorder that allegedly arose out of his employment. The parties ultimately stipulated that employer and its insurer had knowledge of that claim by no later than May 1, 1992.

---

[1] The term "interim compensation" does not appear in ORS 656.262. The origin of that term appears to be *Jones v. Emanuel Hospital,* 280 Or 147, 151, 570 P2d 70 (1977), where, in discussing ORS 656.262, the court observed:

> "Subsection (2), construed together with subsections (4) and (5) requires the employer to pay what may for convenience be called interim compensation payments until the employer denies the claim."

In the fall of 1992, Cohen took a leave of absence and, apparently, requested that another attorney, Warshafsky, monitor claimant's workers' compensation file in Cohen's absence. Warshafsky was not an associate or partner of the Gildea firm. He did, however, share office space with the firm and was sometimes associated with the firm on specific cases. Neither Warshafsky nor the Gildea law firm ever executed a valid retainer agreement authorizing representation of claimant on the workers' compensation matter.

In October 1992, Warshafsky and counsel for the insurer had a telephone conversation regarding the mental condition claim. On October 16, insurer's counsel, apparently—but erroneously—believing that Warshafsky represented claimant, sent a letter to Warshafsky, enclosing an original notice of denial of claimant's mental condition claim, as well as a copy of that denial. Insurer did not send a copy of the letter or of the denial to claimant. Rather, in his letter, which was dated October 16, insurer's counsel explained:

"Accompanying this letter is the original and your copy of my client's denial of [claimant's] workers' compensation claim. I am sending it to you rather than to [claimant's] home because I felt that best under the circumstances. If he wishes to pursue the claim, [claimant] must request a hearing."

Claimant was unaware of that letter and of the denial until December 15, 1993. He discovered the letter and denial only after he demanded, and received, his file from the Gildea firm. Notwithstanding his knowledge of the purported denial, claimant did nothing until November 1994, when he retained his present counsel. At that time, claimant filed a request for hearing, alleging *de facto* denial and entitlement to interim compensation. Claimant did not request a hearing on the compensability of his mental condition or otherwise assert that his condition was compensable.

In deciding claimant's entitlement to interim compensation, the administrative law judge (ALJ) initially determined that insurer's denial of the claim was constructively served on claimant because insurer sent the denial to an attorney, Warshafsky, who the ALJ concluded "represented" claimant. Consequently, the ALJ determined that insurer's

denial was effective to terminate interim compensation as of October 19, 1993. Claimant sought Board review.

The Board ultimately vacated the ALJ's order and remanded for reconsideration, for reasons that are immaterial to our review. On remand, the ALJ allowed the admission of newly discovered evidence regarding the relationship between Warshafsky and claimant and, particularly, whether Warshafsky did, in fact, represent claimant. Based on that new evidence, the ALJ determined that Warshafsky did not represent claimant and that insurer's October 19, 1993, denial was ineffective to terminate entitlement to interim compensation, because the mailing was not reasonably calculated to apprise claimant of the denial. *See* ORS 656.262(6)(a), (9); OAR 438-005-0065; ORCP 7(D)(1). Consequently, the ALJ awarded claimant interim compensation from May 1, 1992 to June 20, 1995, and allowed claimant's attorney an out-of-compensation fee award. ORS 656.262(11). Insurer sought Board review.

The Board adopted the findings of the ALJ but reduced claimant's award of interim compensation to extend only through December 15, 1993. The Board agreed with the ALJ that the October 19, 1992, denial did not terminate insurer's obligation to pay interim compensation. In so holding, the Board stated:

> "[i]nasmuch as it is undisputed that the denial *was not furnished to claimant,* himself, when it was issued, we find that * * * the October 19, 1992 denial did not terminate the insurer's obligation to pay interim compensation on the date the denial was issued." (Emphasis added.)

The Board specifically rejected insurer's argument that mailing the notice to Warshafsky was "reasonably calculated to apprise" claimant of the denial:

> "Under the circumstances of this claim, where the denial was apparently sent by ordinary mail to an attorney who not only never represented claimant, but also never discussed claimant's legal business with him, we are not persuaded that the insurer's method of service was reasonably calculated to apprise claimant of the denial."

The Board did, however, modify the ALJ's award. In particular, the Board concluded that, because claimant had "actual knowledge" of the denial on or about December 15, 1993, his entitlement to interim compensation ended on that date—and not on June 20, 1995, as under the ALJ's order. Consequently, the Board reduced claimant's interim compensation award and, concomitantly, modified the out-of-compensation attorney fee award. On claimant's petition for reconsideration, the Board amplified its explanation of why, in its view, claimant's "actual knowledge" of the purported denial was sufficient to terminate the entitlement to interim compensation:

> "In our original order, we terminated interim compensation on December 15, 1993 because we found that claimant 'received actual knowledge' of the denial on that date. In *Jones v. Emanuel Hospital*, 280 Or 147, 152[, 570 P2d 70] (1977) the Court held that a worker cannot appeal until he or she 'receives the notice of denial.' Thus, under *Jones*, the focus is on actual receipt of the denial by a claimant.

> "In this case, claimant stipulated that he actually received the denial on or about December 15, 1993 after he obtained his legal file from the Gildea law firm. Thus, applying the *objective* standard of *Jones*, we find that claimant received the notice of denial on December 15, 1993. We, therefore, reiterate our prior holding that claimant's right to interim compensation ceased on that date." (Emphasis in original.)

The parties' positions in petitioning and cross-petitioning for review mirror their positions before the Board: Claimant asserts that his entitlement to interim compensation did not terminate upon his "actual knowledge" of the denial in December 1993, but, instead, continued through June 20, 1995. Insurer contends that claimant's interim compensation ended on October 19, 1992, with its mailing of the denial to Warshafsky.

■ For the sake of analytic coherence, we first address insurer's arguments on cross-petition. ORS 656.262 provides, in part:

> "(1) Processing of claims and providing compensation for a worker shall be the responsibility of the insurer or self-insured employer. * * *

"* * * * *

"(6)(a)   Written notice of * * * *denial* of the claim *shall be furnished to the claimant by the insurer* * * * within 90 days after the employer had notice or knowledge of the claim. * * *.[2]

"* * * * *

"(9)   If an insurer * * * denies a claim for compensation, *written notice of such denial,* stating the reason for the denial, and informing the worker of the Expedited Claim Service and of hearing rights under ORS 656.283, *shall be given to the claimant.* A copy of the notice of denial shall be mailed to the director and to the employer by the insurer. The worker may request a hearing pursuant to ORS 656.319." (Emphasis added.)

OAR 438-005-0065, which governs the manner of furnishing notice of denial, provides:

"Notice of denial or other notice from which statutory time runs against a claimant shall be in writing and shall be delivered by registered or certified mail with return receipt requested or by personal service meeting the requirements for service of a summons."

In this case, the Board construed, and equated, the phrase "personal service meeting the requirements for service of a summons" in OAR 438-005-0065 with the requirements of ORCP 7 D, which governs service of process in civil cases. ORCP 7 D provides, in part:

"D(1)   Summons shall be served, either within or without this state, in any manner reasonably calculated, under all the circumstances, to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend. Summons may be served in a manner specified in this rule or by any other rule or statute on the defendant or upon an agent authorized by appointment or law to accept service of summons for the defendant. Service may be made, subject to the restrictions

---

[2] *Former* ORS 656.262(6) was amended in 1995 and renumbered as ORS 656.262(6)(a) (1995). That amendment was fully retroactive and did not lengthen or shorten the procedural time limitations with regard to any action on the claim taken prior to the effective date of the amendments. *See* Or Laws 1995, ch 332, § 66(6), *compiled after* ORS 656.202.

and requirements of this rule, by the following methods: personal service of summons upon defendant or an agent of defendant authorized to receive process; substituted service by leaving a copy of summons and complaint at a person's dwelling house or usual place of abode; office service by leaving with a person who is apparently in charge of an office; service by mail; or, service by publication."

Insurer does not challenge the validity of OAR 438-005-0065 or contest the correctness of the Board's construction of that rule by reference to ORCP 7. Rather, insurer contends that the mailing to Warshafsky was sufficient under ORCP 7 D(1)—and, thus, under OAR 438-005-0065—because it was "reasonably calculated to apprise" claimant of the denial. *See generally Baker v. Foy,* 310 Or 221, 228-29, 797 P2d 349 (1990) (describing two-step inquiry for determining whether, under ORCP 7, process was properly served).

We disagree. "Service" on an attorney who is not representing a party is not "reasonably calculated to apprise" that party of a matter—here, the denial. In this case, it is undisputed that Warshafsky did not, in fact, represent claimant. Warshafsky testified that at no time did he represent claimant with respect to the workers' compensation claim, and Warshafsky never gave insurer written notice that he was representing claimant. *See generally* ORS 656.331 (providing for written notice of representation). Accordingly, the Board correctly concluded that the October 19, 1992, mailing to Warshafsky did not provide notice of denial to claimant and, thus, did not terminate entitlement to interim compensation. We thus affirm on the cross-petition.

We turn to claimant's petition, which asserts that the Board·erred in determining that his "actual knowledge" of the purported denial terminated his entitlement to interim compensation. As noted, *see* 160 Or App at 553, the Board's holding in that regard was based on its reading of *Jones v. Emanuel Hospital.*

We disagree with the Board's conclusion for two reasons. First, *Jones* does not support the Board's reading. Second, a claimant's actual knowledge of a notice of denial does

not vitiate noncompliance with the explicit requirements of ORS 656.262(6)(a), (9) and OAR 438-005-0065.

In *Jones*, the employer failed to timely accept or deny a claim for compensation and failed to pay any interim compensation. Ultimately, after six months, the employer sent written notice of denial to the claimant. Notwithstanding its failure to provide timely notice of denial, the employer contended that it was not obligated to pay interim compensation because the claimant's injury was not, in fact, compensable. In rejecting that argument, the Supreme Court reasoned:

> "ORS 656.262 gives the employer two choices: deny the claim or make interim payments. To interpret the word 'compensation' as the employer would have us do would give the employer a third choice: to delay acceptance or denial of the claim while making no interim payments. This third choice would delay the worker's appeal from an adverse decision since the worker cannot appeal until he or she *receives* the notice of denial. *.* * * We decline to adopt such an interpretation of the statute and hold that the word 'compensation' includes interim compensation." *Jones*, 280 Or at 151-52 (emphasis added).

In this case, the Board apparently understood *Jones's* reference to "receiv[ing] the notice of denial" to encompass actual notice of the denial by whatever means— that is, that a claimant's actual knowledge of a denial is sufficient to terminate entitlement to interim compensation regardless of the employer's or insurer's failure to comply with the explicit requirements for providing written denial to the claimant. *Jones* does not say that. Nothing in *Jones* even suggests that actual notice can "cure" a failure to furnish notice of denial in the prescribed manner. Indeed, in *Jones* itself the employer *did* give the claimant written notice of the denial—albeit belatedly.

Conversely, the Board's acceptance of the sufficiency of "actual knowledge" cannot be squared with OAR 438-005-0065. That rule provides that the notice of denial is effective only when delivered "by registered or certified mail" or "by personal service meeting the requirements for service of a

summons." Neither occurred here. Nor can some broad-ranging notion of "actual knowledge" be bootstrapped into OAR 438-005-0065 by reference to ORCP 7 and its case law.[3] Indeed, decisions applying ORCP 7 in the civil context have uniformly held that actual notice does not cure substantive deficiencies in the method of service. *See, e.g., Jordan v. Wiser,* 302 Or 50, 726 P2d 365 (1986);[4] *Murphy v. Price,* 131 Or App 693, 699, 886 P2d 1047 (1994), *rev den* 321 Or 137 (1995) (right to receive adequate service of summons as defined by ORCP 7 and its case law is a "substantial right" for purposes of ORCP 12 B; actual notice is insufficient to excuse noncompliance with ORCP 7). *See generally Abbotts v. Bacon,* 133 Or App 315, 891 P2d 1321 (1995) ("There is no question that defendant actually received the complaint and summons in a timely fashion and was not prejudiced by the deficiencies in service. But Oregon's arcane rules governing service of process make no allowance for actual notice and, thus, compel such technically correct, but practically absurd, results.").

---

[3] As noted, the Board referred to ORCP 7 D(1) in determining the sufficiency, under OAR 438-005-0065, of the October 19, 1993, letter to Warshafsky.

[4] We and the Supreme Court have consistently held that actual notice is insufficient, notwithstanding ORCP 7 G, which provides, in part:

> "Failure to comply with provisions of this rule relating to the form of summons, issuance of summons, and the person who may serve summons shall not affect the validity of service of summons or the existence of jurisdiction over the person, if the court determines that defendant received actual notice of the substance and pendency of the action."

*Jordan v. Wiser* is exemplary. There, the plaintiff attempted to effect substituted service by leaving certified copies of a summons and complaint with the defendant's mother. Because the defendant did not reside with his mother, the substituted service was ineffective. The plaintiff argued, nevertheless, that, because the mother subsequently informed defendant of the pendency of the action, the defendant's actual notice obviated the deficient substituted service. In rejecting that argument, the Supreme Court observed:

> "Plaintiff argues that the first sentence of ORCP 7G. excuses the fact that Jones was a party and therefore disqualified from serving the summons under ORCP 7E. Plaintiff misses the point. ORCP 7G. only excuses the failure to comply with ORCP 7E., but it does not furnish authorization to serve the summons where none existed nor excuse the lack of such authorization to serve the summons.
>
> "* * * * *
>
> "Plaintiff cannot make a silk purse out of a sow's ear nor can she bootstrap Jones' volunteer delivery of summons into authorized service." *Jordan,* 302 Or at 58, 60 (footnotes omitted).

We thus conclude that the Board erred in determining that claimant's actual knowledge of the denial terminated his entitlement to interim compensation as of December 15, 1993. Accordingly, claimant was entitled to interim compensation through June 20, 1995, as well as to out-of-compensation attorney fees corresponding to that award.

Reversed and remanded on petition; affirmed on cross-petition.